1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KYLE AVERY,                              No.  2:11-cv-1945-KJM-EFB P (TEMP)

12              Plaintiff,

13         v.                                   FINDINGS AND RECOMMENDATIONS

14    T. VIRGA et al.,

15              Defendants.

16

17         Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under

18    42 U.S.C. § 1983.  Defendants Turner and Virga have moved for summary judgment.  Plaintiff

19    has filed an opposition to the motion, and defendants have filed a reply.  For the reasons

20    explained below, it is recommended that the motion be granted in part and denied in part.

21                                      **BACKGROUND**

22         Plaintiff is proceeding on an amended complaint.  At screening, then-Magistrate Judge

23    Dale A. Drozd found that plaintiff's amended complaint stated a cognizable claim under the First

24    Amendment for retaliation against defendants Dreager-Smith and Porter.  According to plaintiff,

25    the defendants issued him a rules violation report after they reviewed his inmate appeal

26    complaining about their failure to address his concerns over inmates desecrating pagan religious

27    property.  Judge Drozd also found that plaintiff's complaint stated a cognizable First Amendment

28    claim against defendants Johnson, Guzman, Macomber, and Virga for allegedly threatening to

1

1   transfer plaintiff to a different prison in retaliation for his prior litigation activities against prison

2   officials.  Finally, Judge Drozd found that plaintiff's amended complaint stated a cognizable

3   claim under RLUIPA, the First Amendment, and the Fourteenth Amendment Equal Protection

4   Clause against defendants Virga, Smith, Porter, Detlefsen, Carter, Johnson, Guzman, Macomber,

5   and Elia because plaintiff informed these defendants that his fellow inmates were destroying

6   pagan religious property, but the defendants allegedly refused to address the problem, thereby

7   substantially burdening his religion.  ECF Nos. 16, 22 & 25.

**PROCEDURAL HISTORY**

9        On May 5, 2014, defendants filed a motion to dismiss plaintiff's RLUIPA claim on the

10  grounds that his request for injunctive relief had been rendered moot.  ECF No. 31.  In response

11  to the motion, plaintiff moved to withdraw his RLUIPA claim.  ECF No. 32.  On November 21,

12  2014, Judge Drozd granted plaintiff's request to withdraw his RLUIPA claim and denied

13  defendants' motion to dismiss as moot in light of that withdrawal.  ECF No. 34.

14       Defendants filed an amended answer to plaintiff's complaint, ECF No. 35, and on January

15  6, 2015, the court issued a discovery and scheduling order, ECF No. 36.  Thereafter, defendants

16  filed the pending motion for summary judgment.  ECF No. 40.  Defendants argue that they are

17  entitled to summary judgment on the merits of plaintiff's claims and further argue that plaintiff

18  failed to exhaust his administrative remedies with respect to all of his claims, except his First

19  Amendment retaliation claim against defendants Dreager-Smith and Porter.  *Id.*  Finally,

20  defendants argue that they are entitled to qualified immunity.  *Id.*

**SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

22       Summary judgment is appropriate when there is "no genuine dispute as to any material

23  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

24  judgment avoids unnecessary trials in cases in which the parties do not dispute the facts necessary

25  to the determination of the issues in the case, or in which there is insufficient evidence for a jury

26  to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

27  (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

28  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

1    motion asks whether the evidence presents a sufficient disagreement to require submission to a

2    jury.

3         The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

4    or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

5    "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

6    trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

7    (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

8    under summary judgment practice, the moving party bears the initial responsibility of presenting

9    the basis for its motion and identifying those portions of the record, together with affidavits, if

10   any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

11   U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

12   party meets its burden with a properly supported motion, the burden then shifts to the opposing

13   party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

14   *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

15        A clear focus on where the burden of proof lies as to the factual issue in question is crucial

16   to summary judgment procedures.  Depending on which party bears that burden, the party seeking

17   summary judgment does not necessarily need to submit any evidence of its own.  When the

18   opposing party would have the burden of proof on a dispositive issue at trial, the moving party

19   need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

20   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

21   which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-

22   24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

23   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

24   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

25   should be entered, after adequate time for discovery and upon motion, against a party who fails to

26   make a showing sufficient to establish the existence of an element essential to that party's case,

27   and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a

28   circumstance, summary judgment must be granted, "so long as whatever is before the district

1   court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

2   To defeat summary judgment the opposing party must establish a genuine dispute as to a material

3   issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is

4   material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248

5   ("Only disputes over facts that might affect the outcome of the suit under the governing law will

6   properly preclude the entry of summary judgment."). Whether a factual dispute is material is

7   determined by the substantive law applicable for the claim in question. *Id.* If the opposing party

8   is unable to produce evidence sufficient to establish a required element of its claim that party fails

9   in opposing summary judgment. "[A] complete failure of proof concerning an essential element

10  of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at

11  322.

### THE EXHAUSTION REQUIREMENT

13  By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C.

14  § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under

15  section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

16  other correctional facility until such administrative remedies as are available are exhausted." 42

17  U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life,

18  whether they involve general circumstances or particular episodes, and whether they allege

19  excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

20  The United States Supreme Court has ruled that exhaustion of prison administrative

21  procedures is mandated regardless of the relief offered through such procedures. *See Booth v.

22  Churner*, 532 U.S. 731, 741 (2001). The Supreme Court has also cautioned against reading

23  futility or other exceptions into the statutory exhaustion requirement. *See id.* at 741 n.6.

24  Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion

25  requirement by filing an untimely or otherwise procedurally defective administrative grievance or

26  appeal. *See Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). "[T]o properly exhaust administrative

27  remedies prisoners 'must complete the administrative review process in accordance with the

28  applicable procedural rules,' [ ] - rules that are defined not by the PLRA, but by the prison

4

1    grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S.

2    at 88).  *See also Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison

3    system's requirements 'define the boundaries of proper exhaustion.'").

4         In California, prisoners may appeal "any policy, decision, action, condition, or omission

5    by the department or its staff that the inmate or parolee can demonstrate as having a material

6    adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).

7    Most appeals progress through three levels of review.  *See id.* § 3084.7.  The third level of review

8    constitutes the decision of the Secretary of the California Department of Corrections and

9    Rehabilitation and exhausts a prisoner's administrative remedies.  *See id.* § 3084.7(d)(3).  A

10    California prisoner is required to submit an inmate appeal at the appropriate level and proceed to

11    the highest level of review available to him.  *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir.

12    2005); *Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002).

13         A court may excuse a prisoner from complying with the PLRA's exhaustion requirement

14    if he establishes that the existing administrative remedies were effectively rendered unavailable to

15    him.  *See Albino v. Baca*, 747 F.3d 1162, 1172-73 (9th Cir. 2014).  For example, where prison

16    officials improperly screen out inmate grievances, they can render administrative remedies

17    effectively unavailable.  *See Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010).  In such a case,

18    "the inmate cannot pursue the necessary sequence of appeals . . . ."  *Id.  See also Nunez v.*

19    *Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (excusing an inmate's failure to exhaust because he

20    was precluded from exhausting his administrative remedies by a warden's mistaken instruction to

21    him that a particular unavailable document was needed for him to pursue his inmate appeal);

22    *Marella*, 568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access

23    to the necessary grievance forms to timely file his grievance).

24         The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative

25    defense that defendants must plead and prove.  *See Jones*, 549 U.S. at 216 ("[I]nmates are not

26    required to specially plead or demonstrate exhaustion in their complaints."); *Albino*, 747 F.3d at

27    1168.  A defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6) "[i]n

28    the rare event" that a prisoner's failure to exhaust is clear on the face of the complaint.  *Albino*,

1    747 F.3d at 1168 & 1169.  More typically, defendants are required to move for summary

2    judgment under Federal Rule of Civil Procedure 56 and produce probative evidence that proves a

3    prisoner's failure to exhaust.  *See id.* at 1166.  Specifically, "the defendant's burden is to prove

4    that there was an available administrative remedy, and that the prisoner did not exhaust that

5    available remedy."  *Id*. at 1172.  If the defendant carries that burden, "the prisoner has the burden

6    of production.  That is, the burden shifts to the prisoner to come forward with evidence showing

7    that there is something in his particular case that made the existing and generally available

8    administrative remedies effectively unavailable to him."  *Id*.  If the undisputed evidence viewed

9    in the light most favorable to the prisoner demonstrates a failure to exhaust, the court should grant

10   defendant's motion for summary judgment.  *Id*. at 1166.  On the other hand, if there are material

11   facts in dispute, the court should deny defendant's motion summary judgment.  *Id*.

12   I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

13          The Civil Rights Act under which this action was filed provides as follows:

14          Every person who, under color of [state law] . . . subjects, or causes
             to be subjected, any citizen of the United States . . . to the
15          deprivation of any rights, privileges, or immunities secured by the
             Constitution . . . shall be liable to the party injured in an action at
16          law, suit in equity, or other proper proceeding for redress.

17   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

18   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  *See*

19   *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362

20   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

21   meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

22   omits to perform an act which he is legally required to do that causes the deprivation of which

23   complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

24          Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

25   their employees under a theory of *respondeat superior* and, therefore, when a named defendant

26   holds a supervisorial position, the causal link between him and the claimed constitutional

27   violation must be specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979);

28   *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations

1   concerning the involvement of official personnel in civil rights violations are not sufficient.  *See*

2   *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

3   **THE FIRST AMENDMENT AND RETALIATION**

4   Both the initiation of litigation before the court and the filing of inmate appeals are

5   protected conduct, and prison officials may not retaliate against prisoners for engaging in these

6   activities.  *See Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).  As the U.S. Court of

7   Appeals for the Ninth Circuit has explained:

8   > Within the prison context, a viable claim of First Amendment
    > retaliation entails five basic elements:  (1) An assertion that a state
9   > actor took some adverse action against an inmate (2) because of (3)
    > that prisoner's protected conduct, and that such action (4) chilled
10  > the inmate's exercise of his First Amendment rights, and (5) the
    > action did not reasonably advance a legitimate correctional goal.
11

12  *Rhodes*, 408 F.3d at 567–68.  *See also Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011)

13  (prisoners retain First Amendment rights not inconsistent with their prisoner status or penological

14  objectives, including the right to file inmate appeals and the right to pursue civil rights litigation).

15  **DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND EVIDENCE**

16  In support of their motion, the defense has submitted a statement of undisputed facts

17  supported by citations to declarations signed under penalty of perjury by defendant Guzman,

18  defendant Johnson, defendant Detlefsen, defendant Macomber, defendant Carter, defendant

19  Virga, defendant Porter, defendant Elia, defendant Dreager-Smith, Chief of the Office of Appeals

20  Voong, and Appeals Coordinator Burnett.  In addition, defendants have submitted copies of

21  plaintiff's relevant inmate appeals and prison officials' responses thereto.  In relevant part, the

22  evidence submitted by defendants establishes the following.

23  In August 2010, plaintiff, who was housed at CSP-Sacramento, sought to have his own

24  outdoor area for Wiccan worship and did not want other inmates to enter the outdoor worship

25  area on the A yard.  However, the outdoor common area was intended to be available for all

26  Nature based religious practitioners.   Defs.' SUDF 1-2 (ECF No. 40-3), Dreager-Smith Decl.,

27  ¶ 3-4, Porter Decl., ¶ 3-4, Elia Decl., ¶ 3.

28  /////

7

On August 15, 2010, plaintiff gave defendants Dreager-Smith and Porter a 602 administrative appeal alleging that other inmates had been destroying pagan religious property in the Wiccan yard and requested that they make a photocopy so that he could provide a copy to the Catholic chaplain.  The contents of the inmate appeal led defendants Dreager-Smith and Porter to believe that plaintiff would personally attack, and encourage others to attack, enhanced outpatient program ("EOP") inmates who entered the A Facility Wiccan outdoor worship area.  Defendants Dreager-Smith and Porter perceived this appeal to be a threat to the safety and security of the institution.  As a result, defendant Dreager-Smith issued plaintiff a rules violation report ("RVR") for inciting inmate on inmate violence.  Defs.' SUDF 3-6 (ECF No. 40-3), Pl.'s Am. Compl. at 12-13, Dreager-Smith Decl., ¶ 10-13, Porter Decl., ¶ 10-14.

Following the issuance of the RVR, defendant Detlefsen placed plaintiff in administrative segregation ("ad-seg") while the incident was being investigated.  Institutional safety and security concerns require that all threats be investigated before an inmate can be returned to normal programming or housing.  On August 16, 2010, defendant Carter authorized plaintiff's retention in ad-seg until the institutional classification committee ("ICC") could conduct a review because defendant Carter believed that plaintiff continued to present a threat to the safety of himself and others, and also endangered the institution.  Defendant Carter did not retain plaintiff in ad-seg because he exercised his First Amendment rights.  Defs.' SUDF 7-10 (ECF No. 40-3), Detlefsen Decl., ¶¶ 5 & 7; Defs.' Ex. 1, Guzman Decl., ¶ 10, Virga Decl., ¶ 6, Macomber Decl., ¶ 6, Johnson Decl., ¶ 6, Carter Decl., ¶ 14-16.

On August 18, 2010, plaintiff appeared before defendants Virga and Johnson at the ICC for his Initial Administrative Segregation Unit Review.  At the time of plaintiff's ICC hearing, defendant Dreager-Smith had not completed her investigation into plaintiff's alleged incitation of inmate-on-inmate violence.  As a result, the ICC elected to keep plaintiff in ad-seg.  At the conclusion of the hearing, plaintiff was informed that he had the right to appeal the ICC's actions.  Defs.' SUDF 11-14 (ECF No. 40-3), Virga Decl., ¶ 2 & 4, Johnson Decl., ¶ 2 & 4, Defs.' Ex. 2.

On September 5, 2010, Correctional Officer Sandoval interviewed plaintiff in regards to the inmate appeal he submitted where he stated he was going to assault EOP inmates that entered

1   the Wiccan area without permission.  Plaintiff informed Officer Sandoval that he would "fire on,"

2   meaning, physically assault any EOP inmates that entered the Wiccan area.  Based on plaintiff's

3   statement and Officer Sandoval's investigation, Officer Sandoval concluded that plaintiff would

4   present a threat to the safety of the institution and the safety of others if he was housed in A

5   Facility.  Officer Sandoval recommended that plaintiff be retained in ad-seg until he could be

6   transferred to another institution.  Soon thereafter, however, plaintiff's initial ad-seg placement

7   concerning inciting violence amongst inmates had been resolved.  Defs.' SUDF 15-19 (ECF No.

8   40-3), Sandoval Decl., ¶ 3-6, Defs.' Exs. 3 & 4.

9           As of September 14, 2010, plaintiff was no longer housed in ad-seg for allegedly inciting

10   violence between inmates.  Instead, plaintiff was housed in ad-seg based on his need for sensitive

11   needs yard ("SNY") housing.  Because CSP-Sacramento did not have designated SNY housing

12   available, ad-seg was the safest place for plaintiff to remain until he could be transferred to a

13   facility that could provide SNY housing.  On September 29, 2010, plaintiff appeared before

14   defendants Macomber and Johnson at his ICC hearing for his initial ad-seg review.  During the

15   hearing, the ICC confirmed that sensitive needs concerns were based on plaintiff's request and

16   that his concerns were sincere.  At the ICC hearing, plaintiff indicated that he would like to go to

17   Mule Creek State Prison ("MCSP").  As a result, the ICC planned to transfer plaintiff to a SNY at

18   MCSP or alternatively to a SNY at Richard J. Donovan Correctional Facility in San Diego.

19   Defs.' SUDF 20-25 (ECF No. 40-3), Virga Decl., ¶ 8, Johnson Decl., ¶¶ 8-12, Macomber Decl.,

20   ¶¶ 8-12, Guzman Decl., ¶¶ 11-12, Defs.' Exs. 4 & 5.

21           On October 27, 2010, plaintiff appeared before defendants Virga and Johnson at the ICC

22   for his Program Review.  At that time, the ICC rescinded the previous ICC's recommended

23   transfer to MCSP because plaintiff had documented enemy concerns at MCSP.  Defendant

24   Johnson had attempted to but could not resolve plaintiff's enemy concerns at MCSP.  Plaintiff

25   could not be transferred to the proposed back up SNY facility, Richard J. Donovan Correctional

26   Facility in San Diego, because plaintiff had an ongoing court case in Sacramento.  As a result,

27   plaintiff agreed to program in general population on A yard at CSP-Sacramento.  Defs.' SUDF

28   26-30 (ECF No. 40-3), Virga Decl., ¶¶ 11-15, Johnson Decl., ¶¶ 15-19, Defs.' Ex. 6.

1    As part of the agreement to allow plaintiff to return to A yard at CSP-Sacramento, the ICC

2    members discussed Officer Sandoval's September 5, 2010 chrono with plaintiff and explained to

3    plaintiff that the Wiccan area was not his property or his duty to patrol.  The ICC members also

4    instructed plaintiff that if he had problems in the Wiccan yard that he was to notify staff

5    members.  Defs.' SUDF 31-32 (ECF No. 40-3), Virga Decl., ¶ 16-17, Johnson Decl., ¶ 20-21,

6    Defs.' Ex. 6.

7    After plaintiff returned to A yard, plaintiff submitted a proposal to defendants Virga and

8    Carter to extend the fence around the outdoor Wiccan and Native American areas.  Defendants

9    Virga and Carter informed plaintiff that the appropriate channel to pursue such a proposal was

10   through the 602 administrative grievance process.  Defs.' SUDF 33-34 (ECF No. 40-3), Virga

11   Decl., ¶¶ 18-19, Carter Decl., ¶¶ 17-19, Defs.' Ex. 7.

12   On or around January 16, 2011, plaintiff submitted Appeal SAC-11-00201 and

13   complained that individuals were trespassing in the Wiccan and Native American lodge area and

14   that the fence needed to be extended so that it could not be jumped.  Plaintiff suggested that

15   allowing the fence to remain jumpable allowed for the desecration of the religious area and that it

16   impeded on his protected rights.  Defs.' SUDF 35 (ECF No. 40-3), Virga Decl., ¶ 20, Elia Decl.,

17   ¶ 6, Burnett Decl., ¶ 6, Defs.' Ex. 16.

18   On February 10, 2011, defendant Elia provided an informal level response to plaintiff's

19   administrative appeal and explained that the institution installed the fence to delineate the

20   boundaries of the outdoor common worship area, but that the fence was never meant to secure the

21   area.  Defs.' SUDF 36 (ECF No. 40-3), Elia Decl., ¶ 7, Defs.' Ex. 16, p. 7.

22   On April 11, 2011, R. Stewart, the A Facility Chaplain, responded to plaintiff at the first

23   level of review and explained that the fence was not designed to provide security, but was instead

24   designed to designate the area as a place for Nature based religious practitioners, similar to the

25   Native American Lodge area.  Defs.' SUDF 37 (ECF No. 40-3), Defs.' Ex. 16, p. 8.

26   On May 31, 2011, defendant Virga responded to plaintiff at the second level of review.

27   Defendant Virga explained that plaintiff did not provide sufficient documentation to show that

28   Wiccans must have sole access to an outdoor common worship area to not impede on their

10

1     protected religious rights.  Defendant Virga further explained that the outdoor common area was

2     intended to be available for all Nature based practitioners and that plaintiff was not permitted to

3     use force to prevent non-Wiccan people from entering the fenced area.  Defendant Virga also

4     encouraged and instructed plaintiff to contact the A Facility Chaplain Stewart if he had

5     documentation to address the points defendant Virga listed.  Defendant Virga denied plaintiff's

6     appeal at the second level.  Defs.' SUDF 38-40 & 44 (ECF No. 40-3), Virga Decl., ¶¶ 21-24,

7     Defs.' Ex. 16, pp. 9-10, Burnett Decl., ¶ 6.

8           While plaintiff may have wanted his own outdoor area for Wiccan worship, defendants

9     Virga and Elia were not aware of anything in Wiccan faith, and plaintiff did not provide

10    defendants Virga or Elia with any documentation, that would support the notion that Wiccans

11    could not share the outdoor space with other faiths.  As Warden and Community Resources

12    Manager, defendants Virga and Elia, respectively, try to ensure that all faiths have equal

13    accessibility to common worship spaces, and plaintiff's proposal would have excluded other

14    groups from utilizing the space.  Sergeant Porter nonetheless asked the A Facility Observation

15    Booth officers to monitor the Wiccan area to ensure that the area was not damaged or desecrated.

16    Plaintiff did not submit Appeal SAC-11-00201 to the third level of the appeal process.  Defs.'

17    SUDF 41-43 & 45 (ECF No. 40-3), Virga Decl., ¶¶ 25-26, Elia Decl., ¶¶ 8-9, Porter Decl., ¶ 9,

18    Voong Decl., ¶ 11, Defs.' Ex. 3.

19          Between August 15, 2010 and July 21, 2011, the Office of Appeals accepted and

20    adjudicated one appeal from plaintiff at the third level of review, Appeal SAC-10-01108.

21    Plaintiff submitted Appeal SAC-10-01108 on August 16, 2010.  In Appeal SAC-10-01108

22    plaintiff sought to challenge defendants Dreager-Smith and Porter's RVR and his subsequent

23    placement in ad-seg.  Defs.' SUDF 46-48 (ECF No. 40-3), Voong Decl., ¶ 8, Defs.' Ex. 9.

24          Plaintiff did not submit any appeals that were accepted or adjudicated at the third level of

25    the appeal process that alerted prison officials that defendants Johnson, Guzman, Macomber and

26    Virga threatened to adversely transfer plaintiff to a different prison in retaliation for his prior

27    litigation activities against prison staff and administrators.  Plaintiff also did not submit any

28    appeals that were accepted or adjudicated at the third level of the appeal process that alerted

1   prison officials that defendants Virga, Smith, Porter, Detlefsen, Carter, Johnson, Guzman,

2   Macomber, or Elia failed to address his concerns that fellow inmates were destroying pagan

3   property and artifacts.  Defs.' SUDF 49-50 (ECF No. 40-3), Burnett Decl., Voong Decl., Defs.'

4   Exs. 9-19.

5                                    **ANALYSIS**[1]

6          As discussed below, the record demonstrates that plaintiff failed to exhaust his

7   administrative remedies with respect to all of his claims, except for his First Amendment

8   retaliation claim against defendants Dreager-Smith and Porter.  With respect to plaintiff's First

9   Amendment retaliation claim against defendants Dreager-Smith and Porter, plaintiff has

10  submitted evidence to establish a genuine issue of material fact as to whether defendants

11  retaliated against him.  Further, as explained below, defendants are not entitled to summary

12  judgment based on qualified immunity.

13  I.  Exhaustion of Administrative Remedies

14         Defendants have carried their burden of demonstrating that plaintiff failed to exhaust his

15  administrative remedies with respect to his claims against defendants Johnson, Guzman,

16  Macomber, and Virga for allegedly threatening to transfer him to a different prison for his prior

17  litigation activities.  Plaintiff has not established a material issue of fact as to the exhaustion of

18  these claims.  Further, the record shows that plaintiff failed to exhaust his administrative remedies

19  with respect to his claims against defendants Virga, Smith, Porter, Detlefsen, Carter, Johnson,

20  Guzman, Macomber, and Elia for allegedly refusing to address his complaints about his fellow

21  inmates destroying pagan property and artifacts, thereby substantially burdening his religion.

22  Specifically, the evidence before the court establishes that plaintiff never properly exhausted

23  these claims by submitting an inmate appeal on the issues and pursuing the appeal through the

24  Director's level of review prior to filing this civil rights action, as required.

25         Defendants' evidence shows that plaintiff submitted only one inmate appeal, Appeal Log

26  No. SAC-10-001108, related to the facts of this case that he pursued through the Director's level

27

28         [1] All page numbers cited herein are assigned by the court's CM/ECF system and not based
    on the parties' pagination of their briefing materials.

                                    12

1    of review.  Defs.' Mot. for Summ. J. (ECF No. 40) Ex. 9.  He submitted that appeal on August

2    16, 2010.  *Id*.  In the section labeled "Describe Problem," plaintiff complained about defendants

3    Dreager-Smith and Porter issuing him a RVR that resulted in his placement in administrative

4    segregation.  *Id*.  In the "Action Requested" portion of the inmate appeal form, plaintiff said he

5    wanted to be released from administrative segregation.  *Id*.

6         In opposition to summary judgment, plaintiff argues that Appeal Log No. SAC-10-001108

7    provided adequate notice to prison officials of his claim that defendants Johnson, Guzman,

8    Macomber, and Virga threatened to adversely transfer him to a different prison in retaliation for

9    his prior litigation activities.  Pl.'s Opp'n to Defs.' Mot. for Summ. J. (ECF No. 52-1) at 9, 16,

10   92.  Specifically, plaintiff contends that he raised the issue when it "became relevant" at the

11   second and third level appeals.  *Id*. at 92.  But Appeal Log No. SAC-10-001108 does not serve to

12   exhaust plaintiff's retaliatory transfer claim against defendants Johnson, Guzman, Macomber, and

13   Virga.  As plaintiff himself acknowledges, he did not raise any issue concerning a potential

14   transfer until his appeal was at the second or third level of review.  *Id.*  In order to have exhausted

15   his retaliatory transfer claim, plaintiff needed to raise this claim when he first submitted Appeal

16   Log No. SAC-10-001108 or in a newly-submitted inmate appeal.  *See* Cal. Code Regs. tit. 15,

17   § 3084.1 ("Administrative remedies shall not be considered exhausted relative to any new issue,

18   information, or person later named by the appellant that was not included in the originally

19   submitted CDCR Form 602.").  *See also Sapp*, 623 F.3d at 825 (prison officials properly

20   "screened out" and declined to consider a complaint about prisoner's eye condition that he raised

21   for the first time in a second level appeal).  Moreover, while a prisoner is not required to allege

22   every fact necessary to state or prove a legal claim in his administrative appeal, *see Griffin v.*

23   *Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009), he must, at a minimum, "provide enough

24   information . . . to allow prison officials to take appropriate responsive measures."  *Id.* at 1121.

25   *See also McCollum v. Cal. Dep't of Corrs. & Rehab.*, 647 F.3d 870, 876 (9th Cir. 2011) ("While

26   an inmate need not articulate a precise legal theory, 'a grievance [only] suffices if it alerts the

27   prison to the nature of the wrong for which redress is sought.'") (quoting *Griffin*, 557 F.3d at

28   1120).

1    Here, even liberally construing plaintiff's allegations in Appeal Log No. SAC-10-001108,

2   plaintiff did not provide prison officials with adequate notice of the retaliatory transfer claim he

3   now asserts against defendants Johnson, Guzman, Macomber, and Virga in this civil rights action.

4   As noted above, plaintiff complained in Appeal Log No. SAC-10-001108 about defendants

5   Dreager-Smith and Porter's RVR and his placement in administrative segregation.  Defs.' Mot.

6   for Summ. J. (ECF No. 40) Ex. 9.  Plaintiff did not actually raise the issue of a potential transfer

7   until he appealed to the Director's level of review at which point he merely stated "in fact, your

8   staff adversively [sic] attempted to transfer me."  *Id.*  Plaintiff did not include allegations about

9   any adverse transfer being the result of his prior litigation activities or mention or suggest any

10   retaliatory motive on any these defendants' part.  *Id.*

11    Consistent with rulings in this and other districts in this circuit, this court finds that

12   plaintiff did not provide adequate notice to prison officials about his retaliatory transfer claim in

13   Appeal Log No. SAC-10-001108.  *See, e.g., Walton v. Hixson*, No. CIV S-09-1246 GEB CKD,

14   2011 WL 6002919 at *2 (E.D. Cal. Nov. 30, 2011) (finding that a prisoner's inmate grievance

15   complaining about prison official's interference with his praying was not sufficient to alert prison

16   to plaintiff's claim that the alleged  interference was in retaliation for plaintiff submitting a

17   grievance against the official); *Simpson v. Feltsen*, No. 2:09-cv-00302 MSB, 2010 WL 5288181

18   at *5  (E.D. Cal. Dec. 17, 2010) (assuming that a prisoner's inmate grievance was improperly

19   screened out, even if it had been accepted and pursued it would not have sufficed to exhaust a

20   retaliation claim because it made no mention of the prisoner's exercise of his First Amendment

21   rights that allegedly precipitated the prisoner's retaliatory transfer); *Martinez v. Adams*, No.

22   1:09cv00899 LJO DLB, 2010 WL 3912359 at *5 (E.D. Cal. Oct. 5, 2010) (finding a failure to

23   exhaust a retaliation claim because plaintiff's inmate grievances did not "mention retaliation or

24   set forth facts that would alert a prison official to retaliatory conduct for protected conduct");

25   *Gonzalez v. Doe*, No. 07-CV-1962 W (POR), 2010 WL 3718873 at *5 (S.D. Cal. Sept. 20, 2010)

26   ("Even construed liberally, Plaintiff's comments in his Director's level appeal cannot be read as

27   anything more than claims regarding the seriousness of having false confidential information in a

28   prison file, which does not provide notice that the grievances included retaliation."); *Trevino v.*

1   *McBride*, No. 1:08-cv-1649 AWI DLB PC, 2010 WL 2089660 at *3 (E.D. Cal. May 21, 2010)

2   (finding plaintiff had "not sufficiently alerted the prison officials to a problem regarding

3   retaliatory acts by correctional officers . . . as there is no linkage mentioned between previously

4   filed lawsuits and the Defendants' deprivation of his property."); *Thomas v. Sheppard-Brooks*,

5   No. 1:06-cv-01332 LJO YNP PC, 2009 WL 3365872 at *5 (E.D. Cal. Oct. 16, 2009) (prisoner's

6   inmate grievance did not provide prison officials with notice of his retaliation claim because he

7   failed to notify prison officials that his cell housing without light was retaliatory).

8          Plaintiff also argues that he should be excused from the exhaustion requirement because

9   he tried to mail Appeal Log No. SAC-11-00201[2] to the Director's level of review, but it never

10  made it there due to a "rogue mail room officer."  Pl.'s Resp. to Defs.' SUDF Nos. 45-46 (ECF

11  No. 52-1) at 89-91, Pl.'s Decl. ¶¶ 16-18.  Plaintiff also contends that he should be excused from

12  the exhaustion requirement because "retaliatory" coercion led him to believe that if he continued

13  to pursue his appeals he would face adverse punishment.  Pl.'s Opp'n to Defs.' Mot. for Summ. J.

14  (ECF No. 52-1) at 45 & 47, Pl.'s Resp. to Defs.' SUDF No. 50 (ECF No. 52-1) at 93-94.

15         Plaintiff has not shown that he should be excused from the exhaustion requirement.  With

16  respect to his "rogue mail room officer" contention (i.e., that this rogue individual was not

17  delivering large amounts of mail between 2009 and 2011), plaintiff has not provided any evidence

18  that he actually attempted to mail Appeal Log No. SAC-11-00201 to the Director's level of

19  review during this time.  He has not submitted a copy of any such appeal or any follow-up

20  correspondence he submitted to prison officials concerning this appeal that refutes the evidence

21  submitted by the defendants.[3]  Nor has he specified to whom he submitted his Director's Level

22          ────────────────────

23          [2]  In Appeal Log No. SAC-11-00201, plaintiff complained that custody staff had
    repeatedly failed to protect the Wiccan religious area and requested extension of a fence to secure

24  the Wiccan area.  Defs.' Mot. for Summ. J. (ECF No. 40) Ex. 16.

25          [3]  Although plaintiff did submit a letter to a K. Daly inquiring whether he (or prison
    officials) had received Appeal Log No. SAC-10-001108, as discussed above, there is no dispute

26  that plaintiff pursued Appeal Log No. SAC-10-001108 through the Director's level of review.
    Pl.'s Opp'n to Defs.' Mot. for Summ. J., Ex. 14.  Plaintiff has not submitted similar evidence

27  showing that he followed-up with prison officials about Appeal Log No. SAC-11-00201
    concerning defendants' alleged refusal to address his complaint that his fellow inmates were

28  destroying pagan property and artifacts.

1  appeal, nor specified what details the inmate appeal contained, or any of the other circumstances

2  surrounding his alleged submission of such an inmate appeal.  Plaintiff merely contends that

3  because this mail room officer was not delivering large amounts of mail between 2009 and 2011,

4  "it was therefore likely" that at the time plaintiff mailed his Appeal Log No. SAC-11-00201 to the

5  Director's level of review, that officer intercepted it and refused to mail it.  Pl.'s Resp. to Defs.'

6  SUDF No. 45 (ECF No. 52-1) at 89.  Plaintiff's conclusory contentions in this regard are

7  insufficient to meet his burden of production on summary judgment to show that prison officials

8  rendered administrative remedies unavailable to him.  The court is mindful that exhaustion is an

9  affirmative defense.  But defendants have met their burden here of producing an evidentiary

10  record which demonstrates that plaintiff failed to exhaust these claims and it is incumbent upon

11  plaintiff to produce at least some evidence that he actually exhausted the claims in question.

12  Simply asserting conclusory claims contrary to that evidence before the court does not establish a

13  genuine dispute.

14       Given the evidence submitted by defendants, it is plaintiff's burden to demonstrate that

15  there is a genuine issue of material fact with respect to whether he exhausted his constitutional

16  claims prior to filing suit as required.  *See Albino*, 747 F.3d at 1172.  To be sure, plaintiff is

17  entitled to all reasonable inferences that can be drawn from the evidence presented.  But while the

18  court must draw all reasonable inferences from the evidence in plaintiff's favor, any such

19  inferences must be reasonable.  *Matsushita*, 475 U.S. at 588 (1986); *see also I.W. Elec. Service v.*

20  *Pacific Contractors Association*, 809 F.2d 626, 632 (9th Cir. 1987).  The court has reviewed

21  plaintiff's complaint, his opposition to defendants' motion for summary judgment, and all of the

22  evidence submitted on this motion.  That record simply does not show any genuine issue of

23  material fact as to exhaustion.

24       In addition, even assuming plaintiff attempted to mail his Appeal Log No. SAC-11-00201

25  to the Director's level of review, and the "rogue mail room officer" intercepted his mail or failed

26  to send it, plaintiff's own evidence demonstrates that when Warden Virga learned of the failed

27  deliveries he then sent the mail to the intended recipient.  Pl.'s Exs. in Opp'n to Defs.' Mot. for

28  Summ. J. (ECF No. 52) Ex. 11.  Thus, if this "rogue mail room officer" had intercepted any of

1    plaintiff's appeals to the Director's level of review, based on plaintiff's own evidence Warden

2    Virga eventually would have delivered it to the Director's level of review.  There is no record of

3    any such appeal.  Under the circumstances of this case and in light of the evidence submitted on

4    summary judgment, the court finds that plaintiff did not take "reasonable and appropriate steps to

5    exhaust his claim[s]," *Nunez*, 591 F.3d at 1224, concerning defendants' alleged retaliatory

6    transfer or defendants' refusal to address inmate destruction of pagan property and artifacts, and

7    he could not have had "a reasonable and good faith belief that administrative remedies [were]

8    effectively unavailable" to him.  *Sapp*, 623 F.3d at 826.

9           Plaintiff's next contention is that administrative remedies were effectively unavailable to

10   him because "retaliatory" coercion led him to believe that if he continued to pursue his appeals he

11   would face adverse punishment.  Pl.'s Opp'n to Defs.' Mot. for Summ. J. (ECF No. 52-1) at 44-

12   45, 47; Pl.'s Resp. to Defs.' SUDF No. 50 (ECF No. 52-1) at 93-94.  Specifically, he claims that

13   defendants had placed him in administrative segregation based on a prior appeal he had filed, so

14   he felt that any further pursuit of appeals would result in additional reprisals against him.  Pl.'s

15   Opp'n to Defs' Mot. for Summ. J. (ECF No. 52-1) at 44-45, 47.  He appears to argue that he

16   should be excused from having had to pursue any appeals after August 15, 2010.  *Id*.

17          "[F]ear of retaliation may be sufficient to render the inmate grievance procedure

18   unavailable," and therefore a court may excuse a prisoner from complying with the exhaustion

19   requirement under these circumstances.  *McBride v. Lopez*, 807 F.3d 982, 984, 986-87 (9th Cir.

20   2015).  In *McBride*, the court adopted a two-part test with a subjective component and an

21   objective component:

22                  To show that a threat rendered the prison grievance system
                    unavailable, a prisoner must provide a basis for the court to find
23                  that he actually believed prison officials would retaliate against him
                    if he filed a grievance.  If the prisoner makes this showing, he must
24                  then demonstrate that his belief was objectively reasonable.  That
                    is, there must be some basis in the record for the district court to
25                  conclude that a reasonable prisoner of ordinary firmness would
                    have believed that the prison official's action communicated a
26                  threat not to use the prison's grievance procedure and that the
                    threatened retaliation was of sufficient severity to deter a reasonable
27                  prisoner from filing a grievance.

28   *McBride*, 807 F.3d at 987.

                                                    17

But in this case, the undisputed evidence demonstrates that plaintiff did not subjectively believe that prison officials would retaliate against him for filing appeals after August 15, 2010. In fact, plaintiff pursued numerous appeals against defendants and prison officials regarding the claims in this case at the same time he alleges he feared retaliation for filing them. Defs.' Mot. for Summ. J. (ECF No. 40) Exs. 9-19. Thus, the evidence in this case negates any contention that plaintiff "was actually deterred from filing a grievance" by any specific retaliatory threats. *Id.* at 988. Because the record fails to demonstrate a subjective showing, the court need not address whether a "reasonable prisoner of ordinary firmness" would have believed that any alleged actions taken by defendants or prison officials were the equivalent of a threat to not use the administrative grievance process or whether that any threat was so severe that it would have deterred a reasonable prisoner from filing a grievance. *Id.* at 987.

In sum, the undisputed evidence viewed in the light most favorable to the plaintiff demonstrates a failure to exhaust and the court must grant defendants' motion for summary judgment. *Albino*, 747 F.3d at 1166. Plaintiff has not carried his burden of production to show that available administrative remedies are effectively unavailable to him. *Id.* at 1172. Accordingly, it is recommended that defendants' motion for summary judgment based on failure to exhaust administrative remedies be granted on all of his claims except the First Amendment retaliation claim against defendants Dreager-Smith and Porter.[4]

II. Plaintiff's Retaliation Claim against Defendants Dreager-Smith and Porter

Defendants argue that they are entitled to summary judgment on plaintiff's retaliation claim against defendants Dreager-Smith and Porter. They have submitted declarations asserting that defendants Dreager-Smith and Porter issued a rules violation report because plaintiff submitted an inmate appeal that led defendants to believe he was going to incite violence amongst inmates. Dreager-Smith Decl., ¶ 10-14, Porter Decl., ¶ 10-13. They assert that their belief was bolstered during Officer Sandoval's investigation and interview of plaintiff on September 5,

---

[4] In light of the recommendation set forth herein, the court declines to address defendants' alternative arguments that they are entitled to summary judgment based on the substantive merits of these claims and/or the affirmative defense of qualified immunity.

1    2010, during which plaintiff indicated that he would "fire on" any EOP inmates that entered the

2    Wiccan Yard.  Sandoval Decl., ¶ 3-6 & Defs. Ex. 3.

3         On the other hand, plaintiff asserts that defendants Dreager-Smith and Porter retaliated

4    against him by issuing him as a RVR that resulted in his transfer to administrative segregation.

5    Pl.'s Opp'n to Defs' Mot. for Summ. J. (ECF No. 52-1) at 28.  As to causation, plaintiff points to

6    the fact that defendants issued this RVR mere days after he submitted an inmate appeal

7    complaining about their failure to address his concerns that other inmates were destroying Wiccan

8    property and artifacts.  Pl.'s Exs. in Opp'n to Defs' Mot. for Summ. J. (ECF No. 52) Ex. 3, Defs.'

9    Mot. for Summ. J. (ECF No. 40) Ex. 4.  While this evidence is by no means conclusive of a

10   retaliatory motive, and any inference of retaliation is disputed, a reasonable jury could draw that

11   inference and resolve the dispute in plaintiff's favor.  Viewing the facts in the light most

12   favorable to plaintiff, defendants issuing plaintiff a RVR combined with the timing of events are

13   sufficient to raise a triable issue of act regarding defendants' motives.  *See Bruce v. Ylst*, 351 F.3d

14   1283, 1289 (9th Cir. 2003); *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).  Also supporting

15   plaintiff's version of the facts is that prison officials ultimately found him not guilty of the RVR

16   or any conduct that could lead to violence.  Pl.'s Exs. in Opp'n to Defs' Mot. for Summ. J. (ECF

17   No. 52) Ex. 3.

18        As to a chilling effect, the Ninth Circuit has explained that the proper analysis of such a

19   retaliation claim is not whether a plaintiff was actually chilled in the exercise of his constitutional

20   rights.  *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).  Rather, an objective standard

21   applies.  *Id.*  Under that objective standard, the court cannot say as a matter of law that a

22   reasonable person would not have been chilled in the exercise of his constitutional rights by

23   defendants Dreager-Smith and Porter's alleged act of issuing plaintiff a rules violation that

24   resulted in his transfer to administrative segregation in response to plaintiff's appeal.  If a jury

25   were to credit plaintiff's testimony and draw an inference of retaliation for the filing of the inmate

26   appeal based on the timing of the RVR, the jury could properly conclude that the resulting

27   transfer to administrative segregation would chill a reasonable person in the exercise of the right

28   to file an inmate appeal.

19

1    Thus, while defendants argue that they issued plaintiff a rules violation report for a

2  legitimate correctional purpose, the proximity in time to the filing of plaintiff's inmate appeal

3  complaining about a failure to address his concerns could reasonably support a jury finding for

4  plaintiff on the issue.  Defendants may very well have believed that plaintiff posed a security

5  threat to the institution based on his allegations in his inmate appeal.  And after considering the

6  testimony of the defendants as well as the plaintiff, a reasonable jury might fully credit the

7  defendants' explanations for the ultimate transfer to administrative segregation.  Preserving

8  institutional order, discipline, and security are legitimate penological interests that, if they in fact

9  motivated acts taken, will defeat a retaliation claim.  *See Barnett v. Centoni,* 31 F.3d 813, 816

10  (9th Cir.1994); *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985).  But a genuine dispute over

11  this material issue of fact requires that it be resolved at trial.  "[P]rison officials may not defeat a

12  retaliation claim on summary judgment simply by articulating a general justification for a neutral

13  process, when there is a genuine issue of material fact as to whether the action was taken in

14  retaliation for the exercise of a constitutional right."  *Bruce,* 351 F.3d at 1289–90.  If a jury finds

15  that defendants Dreager-Smith and Porter issued plaintiff a rules violation report as "a cover or a

16  ruse" to retaliate against him for filing his inmate appeal it could reasonably find for plaintiff.

17  *See Bruce,* 351 F.3d at 1289 ("But, if, in fact, the defendants used the gang validation procedure

18  as a cover or a ruse to silence and punish Bruce because he filed grievances, they cannot assert

19  that Bruce's validation served a valid penological purpose, even though he may have *arguably*

20  ended up where he belonged.") (citing *Rizzo*, 778 F.2d at 532).

21    In sum, the court finds that plaintiff has submitted sufficient evidence to establish a

22  genuine issue of material fact as to whether defendants retaliated against him.  A trier of fact will

23  consider the credibility of the parties and their witnesses and determine the weight to give to that

24  testimony, a determination which cannot be made on summary judgment.  *Nelson v. City of*

25  *Davis,* 571 F.3d 924, 927 (9th Cir. 2009).

26    Accordingly, it is recommended the defendants' motion for summary judgment be denied

27  as to plaintiff's retaliation claim against defendants Dreager-Smith and Porter.

28  /////

1    III.  Qualified Immunity

2           Government officials enjoy qualified immunity from civil damages unless their conduct

3    violates clearly established statutory or constitutional rights.  *Jeffers v. Gomez,* 267 F.3d 895, 910

4    (9th Cir. 2001) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  When a court is

5    presented with a qualified immunity defense, the central questions for the court are: (1) whether

6    the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the

7    defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue

8    was "clearly established."  *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  The Supreme Court has

9    held that "while the sequence set forth there is often appropriate, it should no longer be regarded

10   as mandatory."  *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).  In this regard, if a court decides

11   that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no

12   necessity for further inquiries concerning qualified immunity."  *Saucier,* 533 U.S. at 201.

13   Likewise, if a court determines that the right at issue was not clearly established at the time of the

14   defendant's alleged misconduct, the court may end further inquiries concerning qualified

15   immunity at that point without determining whether the allegations in fact make out a statutory or

16   constitutional violation.  *Pearson,* 555 U.S. at 236–242.

17          "A government official's conduct violate[s] clearly established law when, at the time of

18   the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable

19   official would have understood that what he is doing violates that right.'"  *Ashcroft v. al-Kidd,*

20   563 U.S. 731, __, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton,* 483 U.S. 635

21   (1987)).  In this regard, "existing precedent must have placed the statutory or constitutional

22   question beyond debate."  *Id.  See also Clement v. Gomez,* 298 F.3d 898, 906 (9th Cir. 2002)

23   ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair

24   warning' to the officials that their conduct was unconstitutional.") (quoting *Saucier,* 533 U.S. at

25   202).  The inquiry must be undertaken in light of the specific context of the particular case.

26   *Saucier,* 533 U.S. at 201.  Because qualified immunity is an affirmative defense, the burden of

27   proof initially lies with the official asserting the defense.  *See Harlow,* 457 U.S. at 812.

28   /////

1    As discussed above, triable issues of fact exist as to whether defendants initiated the RVR

2    against plaintiff triggering his transfer to administrative segregation as retaliation for filing an

3    inmate appeal.  The state of the law in 2010, when the alleged constitutional violations took place,

4    was well established and sufficient to give defendants fair warning that they could not retaliate

5    against an inmate for filing such an appeal.  As early as 1995, "the prohibition against retaliatory

6    punishment [was] clearly established law in the Ninth Circuit for qualified immunity purposes."

7    *See Pratt,* 65 F.3d at 806.  Accordingly, defendants Dreager-Smith and Porter are not entitled to

8    summary judgment based on qualified immunity on plaintiff's retaliation claim against them.

## CONCLUSION

10    Accordingly, IT IS HEREBY RECOMMENDED that:

11    1.  Defendants' motion for summary judgment based on plaintiff's failure to exhaust

12    administrative remedies prior to filing suit as required (ECF No. 40) be granted on all of

13    plaintiff's claims, except his First Amendment retaliation claim against defendants Dreager-Smith

14    and Porter;

15    2.  Defendants' motion for summary judgment on plaintiff's First Amendment retaliation

16    claim against defendants Dreager-Smith and Porter (ECF No. 40) be denied; and

17    3.  Defendants' motion for summary judgment based on the affirmative defense of

18    qualified immunity with respect to plaintiff's First Amendment retaliation claim against

19    defendants Dreager-Smith and Porter (ECF No. 40) be denied.

20    These findings and recommendations are submitted to the United States District Judge

21    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

22    after being served with these findings and recommendations, any party may file written

23    objections with the court and serve a copy on all parties.  Such a document should be captioned

24    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

25    objections shall be filed and served within seven days after service of the objections.  The parties

26    are advised that failure to file objections within the specified time may waive the right to appeal

27    /////

28    /////

the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 24, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE